UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
TAYLOR LENNERT, MACKENZIE LENNERT, ADAM
TUCKER, STEPHANIE WETZEL, RYEN SEYFRIED,
and CHRISTINE MCCONNELL, *on behalf of themselves*
*and all others similarly situated,*

                                         Plaintiffs,

               -against-

DELTA-SONIC CARWASH SYSTEMS, INC.,

                                Defendant.
--------------------------------------------------------------------X

Docket. No.:

**<u>COMPLAINT</u>**

**DEMAND FOR JURY TRIAL**

**Collective Action and
Class Action Complaint**

      Plaintiffs Taylor Lennert, Mackenzie Lennert, Adam Tucker, Stephanie Wetzel, Ryen

Seyfried, and Christine McConnell (collectively, "Plaintiffs"), by and through their attorneys,

Joseph & Norinsberg, LLC, allege on behalf of themselves and all others similarly situated, as

follows:

## <u>NATURE OF CASE</u>

      1.    Plaintiffs bring this action on behalf of themselves and all others similarly situated

for Defendant's systemic and continuous violations of: (i) the wait-time provisions of the Fair

Labor Standards Act ("FLSA"), 29 C.F.R. §785.15;  (ii) the call-in provision contained in the N.Y.

Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.3; (iii) the minimum wage provision of the

NYLL and the FLSA; (iv) the overtime provisions of the FLSA, 29 U.S.C. § 207 *et seq.;* (v) the

overtime provisions of the New York Labor Law ("NYLL") and N.Y. Comp. Codes R. & Regs.

("NYCCRR") Tit. 12, § 142-2.2; (vi) the meal and break provisions of the NYLL §162;  (vii) the

spread of hours requirement as contained in 12 NYCCRR § 142-2.4 (viii) the requirement that

employers furnish employees with a written statement at the time of hiring, and on an annual

basis, containing specific categories of information under the NYLL § 195(1), codified as the New

York Wage Theft Prevention Act (the "NYWTPA"); (ix) the requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL § 195(3); and (x) any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.    DELTA-SONIC CARWASH SYSTEMS, INC. ("Delta-Sonic" or "Defendant") owns and operates at least twenty-eight (28) full-service car wash locations in New York, Illinois, and Pennsylvania, and employs over 4,000 individuals, including Delta Technicians ("Delta Techs)," and advisors – the positions held by the within Plaintiffs.

3.    Although Delta-Sonic annually generates tens of millions of dollars in gross revenue, it refuses to honor its legal obligation to comply with federal and state other wage laws, systematically depriving hundreds of past and current Delta-Sonic employees with wages that they are entitled to as a matter of law. Specifically, Delta-Sonic created and implemented at least four separate unlawful wage policies, as set forth in more detail below.

4.    *First,* Delta-Sonic had an unlawful policy of requiring Plaintiffs to call the company  one hour before their scheduled shift, and then, more frequently than not, Plaintiffs were directed to "wait" for a period of an hour or more, before Delta-Sonic determined whether or not the Plaintiffs should come into work for their scheduled shift. This occurred several times a week. Then, in express violation of federal and state law, Delta-Sonic denied Plaintiffs compensation for the hours they spent waiting, although the wait-time was at the employer's direction and for the employer's benefit.

5.    *Second,* Delta-Sonic had an unlawful policy of paying employees sub-minimum wage rates relying on the tip credit allowance, without complying with the threshold requirements.

2

Specifically, Delta-Sonic failed to inform Plaintiffs of the FLSA's tip credit provisions, 29 U.S.C. § 203(m), as it is required to do. Likewise, at all relevant times, Defendant had an unlawful custom and practice of failing to include the notice of the allowance for tips, on a weekly basis, as a separate line item in Plaintiffs' wage records, as required by the NYLL and supporting regulations, including 12 NYCCRR § 142-2.5(b)(1)(iii). Additionally, when Plaintiffs' tips did not equal the minimum wage amount, Delta-Sonic did not compensate Plaintiffs for the difference owed to ensure that Plaintiffs were paid minimum wages for that pay period. Accordingly, Defendants are not entitled to pay Plaintiffs sub-minimum wages under the FLSA or NYLL.

6.      *Third,* in violation of NYCCRR § 142-2.3, Delta-Sonic unlawfully refused to pay Plaintiffs for at least 4 hours when they commenced their shift at the carwash, but were asked to leave before the completion of four hours. In fact, Delta-Sonic deliberately attempted to circumvent this legal requirement by having Plaintiffs and class members electronically sign a false statement stating that they were "voluntarily" leaving before the completion of a 4-hour shift. Notwithstanding this unlawful and coercive policy, Delta-Sonic is still fully liable for Plaintiffs' call-in pay.

7.      *Fourth,* Plaintiffs worked both tipped jobs and non-tipped jobs. Therefore, during a given a week, Plaintiff were paid both minimum wage rates – for non-tipped jobs – and sub-minimum wage rates – for the tipped jobs, where the expectation was that that the tips would equal the minimum wage.  To the extent that some Plaintiffs worked more than 40 hours per work week, Delta-Sonic violated federal and state law by deliberately paying the wrong overtime rate. Indeed, Delta-Sonic failed to compensate Plaintiffs at the mandatory, statutory rate of one-and-one-half times the *regular* hourly rate, and instead selected the *lowest* hourly rate that Plaintiff earned that week as the basis of computing Plaintiff's overtime, which was the sub-minimum wage rate.

Delta-Sonic willfully miscalculated Plaintiffs overtime pay on a class-wide basis.

8.    Accordingly, Plaintiffs now bring this action on behalf of themselves and all similarly situated employees, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and specifically the collective action provision of the FLSA, 29 U.S.C. § 216(b), to remedy Defendant's violations of the wage and hour provisions of the FLSA, as such violations have deprived Plaintiffs and others similarly situated of their lawfully-earned wages.

9.    Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") § 195 and 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 146-2.2 and 2.3.

## JURISDICTION AND VENUE

10.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

11.    The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

12.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as at least one of Defendant resides within this judicial district.

## DEMAND FOR A JURY TRIAL

13.    Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

### *Plaintiffs*

14.      Plaintiffs Taylor Lennert, Mackenzie Lennert, Adam Trucker, Stephanie Wetzel Ryen Seyfried, and Christine McConnell (collectively, "Plaintiffs"), at all times relevant to this Complaint, have been residents of the County of Erie, and the State of New York.

15.      At all times relevant to this Complaint, Plaintiffs were "employees" of the Defendant within the meaning of the FLSA, 29 USC § 203(e), and NYLL § 190(2).

### *Defendant Delta-Sonic Carwash Systems, Inc.*

16.      At all times relevant to this action, Defendant Delta-Sonic Carwash Systems, Inc. ("Delta-Sonic") was and is a domestic business corporation, with its principal place of business located at 570 Delaware Avenue, Buffalo, New York 14202.

17.      Upon information and belief, Delta-Sonic owns and operates, at minimum, twenty-eight (28) Car Wash Centers in New York, Illinois and Pennsylvania.

18.      At all times relevant to this action, Delta-Sonic was and is engaged in interstate commerce, as defined by the FLSA, and Delta-Sonic's qualifying annual business exceeds $500,000.00, the combination of which subjects Delta-Sonic to the FLSA's overtime requirements.

19.      At all times hereinafter mentioned, Delta-Sonic exercised control over the terms and conditions of Plaintiffs' employment, in that the Defendant had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

20.      Defendant Delta-Sonic was an "employer" of Plaintiffs within the meaning of the

FLSA, 29 USC § 203(d), and NYLL § 190(3).

## **COLLECTIVE ACTION ALLEGATIONS**

21.     Plaintiffs bring their FLSA claims on behalf of themselves and all others similarly situated, who work, or have worked, for Delta-Sonic, during the relevant statutory period, and who inter alia:

     i.   were subject to "wait-time" without lawful compensation;

     ii.  were paid a sub-minimum wage rate, as Defendant failed to comply with the statutory requirements for claiming a tip credit allowance; and

     iii. did not receive overtime pay at the correct, statutory rate for all hours worked, more than forty in a work week.

     (Hereinafter, the "FLSA Collective Action").

22.     As set forth in more detail below, Delta-Sonic engaged in a willful, deliberate and intentional scheme to deprive Plaintiffs of their lawful wages under both state and federal law. Specifically, Delta-Sonic repeated engaged in at least four distinct unlawful, wage-violation practices, as specified below.

23.     *First,* Delta-Sonic violated the FLSA by willfully failing to compensate Plaintiffs for the required "wait-time" they were subject to for to several hours each week, at the direction of the employer, and for the benefit of the employer.

24.     *Second,* Defendant knowingly and willfully operated its business with a policy of not paying the FLSA minimum wage to the Plaintiffs and similarly situated class members. Specifically, at all relevant times, Delta-Sonic had an unlawful custom and practice of not notifying the Named Plaintiffs and similarly situated class members of the FLSA's tip credit provision, 29 U.S.C. § 203(m). Accordingly, Defendants are not entitled to pay Plaintiffs sub-minimum wages under the FLSA.

25.     *Third,* Delta-Sonic is liable under the FLSA for failing to pay Plaintiffs' overtime

premiums at one-and-one-half times the regular rate of pay.

26.     There are numerous similarly situated current and former Delta-Sonic employees who have been similarly underpaid in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

27.     The persons in the FLSA Collective Action identified above, including both current and former employees over the relevant period, is unknown, and facts on which the calculation of that number can be based are presently within the sole control of the Defendant. Upon information and belief there are at least 200 FLSA members, and there could be significantly more.

28.     The precise number of FLSA collective action members should be readily ascertainable from a review of the Defendant's personnel, scheduling, time and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

## NEW YORK CLASS ACTION ALLEGATIONS

29.     Plaintiffs bring this action on their own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), defined to include:

i.     **Wait-Time Class**: All Delta-Sonic's current and former employees, who work(ed) during the last six years in Delta-Sonic's New York carwash centers, and who were subject to "wait time" without lawful compensation.

ii.     **Call-In Pay Class**: All of Delta-Sonic's current and former employees, who worked during the last six years in Delta-Sonic's New York carwash centers, and who were denied payment for a full four hours when asked to leave the workplace before the completion of four hours, in violation of NYCCRR § 142-2.3.

iii.     **Tip Allowance Class**: All of Delta-Sonic's current and former employees, who worked during the last six years in Delta-Sonic's New York carwash centers, and who were paid subminimum wage rate unlawfully, since the Defendant was not entitled to a tip credit.

iv.     **Overtime Class**: All of Delta-Sonic's current and former employees, who

worked during the last six years in Delta-Sonic's New York carwash centers, and who worked more than 40 hours in a workweek, and were not paid the mandatory, statutory rate of one-and-one-half-times the regular hourly rate, in violation of NYLL § 160.

v. **Wage Statement & Notice Class**: All of Delta-Sonic's current and former employees, who worked during the last six years Delta-Sonic's in New York carwash centers, and who were: a) denied lawful wage statements with each payment, in violation of the NYLL § 195(3); and/or b) denied wage notices upon hiring, and annually thereafter, in violation of NYLL § 195(1).

vi. **Meal Break Class**: All of Delta-Sonic's current and former employees, who worked during the last six years in Delta-Sonic's in New York carwash centers, and who were denied a break after six hours of work, in violation of NYLL § 162.

(Hereinafter, the "New York Class Action").

30. *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable. Plaintiffs reasonably estimate there are at least 200 Class Members who reside and work in New York. The precise number of Class Members should be readily available from a review of Defendant's personnel and payroll records.

31. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Class Members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant subjected Plaintiffs and the New York Class to frequent "wait-times" without any compensation;

b. Whether Defendant denied Plaintiffs and the New York Class payment for a full four hours when they were asked to leave the workplace before the completion of four hours;

c. Whether Defendant violated the NYLL and supporting regulations by paying employees sub-minimum wages;

d. Whether Defendant failed to pay Plaintiffs and the New York Class the mandatory statutory rate of one-and-one-half times the regular hourly rate for

all hours worked in excess of 40 in a workweek;

e.  Whether Defendant violated the NYWTPA by failing to provide Plaintiffs and Class Members with sufficiently detailed wage statements with each payment, as required by NYLL § 195(3);

f.  Whether Defendant violated the NYWTPA by failing to provide Plaintiffs and Class Members with a written statement upon hiring, and annually, as required by NYLL § 195(1);

g.  Whether Defendant failed to provide Plaintiffs with a break after 6 hours of work, as required by NYLL § 162;

h.  Whether Defendant failed to pay Plaintiffs and other similarly situated persons for an extra hour's work when their workdays lasted more than 10 hours;

i.  Whether Defendant should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL; and

j.  Whether Defendant's violations were willful.

32.  *Typicality:* Plaintiffs' claims are typical of those of the Rule 23 Class in that the Plaintiffs and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, and course of conduct as all other Rule 23 Class Members' claims and Plaintiffs' legal theories are based on the same legal theories as all other Rule 23 Class Members, as detailed above.

33.  *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Rule 23 York Class. Furthermore, Class Counsel, Joseph & Norinsberg, LLC, are highly qualified to litigate Plaintiffs' and the class' claims. Indeed, Joseph & Norinsberg, LLC concentrates its practice on employment litigation and its attorneys are highly experienced in class action litigation, including class actions arising under the FLSA and NYLL.

34.  *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, inter alia, it is economically unfeasible for

the Rule 23 Class Members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual, along with the fear of reprisal by their employer.

35.     The case will be manageable as a class action because the Defendant should have payroll systems that will allow the wage-and-hour damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

36.     The Defendant has acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## CLASSWIDE FACTUAL ALLEGATIONS

### *Delta-Sonic Car Wash Systems, Inc.*

37.     Delta-Sonic Car Wash Systems, Inc. is a domestic business corporation formed on May 1, 1970. It employs over 4,000 individuals in various positions, including Delta Techs and advisors.

38.     Delta-Sonic Car Wash Systems Inc. operates a soft cloth car wash chain. It offers car wash, detail shop, oil change, and rust proofing services. The company also sells unleaded fuels and operates convenience stores at its locations in Rochester, Buffalo, and Syracuse, New York; Erie, Pennsylvania; and Chicago, Illinois.

39.     Over the years, the number of Delta-Sonic car wash centers has grown to twenty-eight (28), with eighteen (18) of those in New York State.

40.     Delta-Sonic uses a centralized payroll system for its twenty-eight (28) car wash centers locations to administer payroll for its fluctuating workforce, with employees who often work in multiple jobs in different locations that receive tips and may require make up pay and are paid bonuses and commissions.

41.    Based on these facts, Delta-Sonic is liable as an employer of Plaintiffs, and the putative class, for violations complained of in this matter.

***Defendants' Class-Wide Policies***

42.    Plaintiffs bring FLSA and NYLL claims on behalf of themselves and all similarly situated persons employed by Delta-sonic for Defendant's multiple and willful violations of state and federal law.

43.    *First,* Delta-Sonic had an unlawful policy of requiring Plaintiffs to call the company one hour before their scheduled shift, and then, more frequently than not, Plaintiffs were directed to "wait" for a period of an hour or more before Delta-Sonic determined whether or not the Plaintiffs should come into the car wash for their scheduled shift. This occurred several times a week. Then, in express violation of federal and state law, Delta-Sonic denied Plaintiffs compensation for the hours they spent waiting, although the wait-time was at the employer's direction and for the employer's benefit.

44.    *Second,* Delta-Sonic had an unlawful policy of paying employees sub-minimum wage rates relying on the tip credit allowance, without complying with the threshold requirements. Specifically, Delta-Sonic failed to inform Plaintiffs of the FLSA's tip credit provisions, 29 U.S.C. § 203(m), as it is required to do under federal law. Likewise, at all relevant times, Defendant had an unlawful custom and practice of failing to include the notice of the allowance for tips, on a weekly basis, as a separate line item in Plaintiffs' wage records, as required by the NYLL and supporting regulations, including 12 NYCCRR § 142-2.5(b)(1)(iii). Additionally, when Plaintiffs' tips did not equal minimum wage, Delta-Sonic did not compensate Plaintiffs for the difference between the tips they earned and minimum wages, thereby depriving Plaintiffs of earning minimum wages for that pay period. Accordingly, Defendants violated the law by failing to pay

Plaintiffs minimum wages under the FLSA or NYLL.

45.     *Third,* in violation of NYCCRR § 142-2.3, Delta-Sonic refused to pay Plaintiffs for at least 4 hours when they commenced their shift at the carwash but were asked to leave before the completion of four hours. In fact, Delta-Sonic deliberately attempted to circumvent this law by ordering Plaintiffs and class members to electronically sign a statement stating, falsely, that they were "voluntarily" leaving before the completion of a 4-hour shift. Notwithstanding this unlawful policy, Delta-Sonic remains fully liable for its failure to pay Plaintiffs their call-in pay.

46.     *Fourth,* most Plaintiffs worked both tipped jobs and non-tipped jobs. Therefore, during a given a week, Plaintiff were paid both minimum wage rates – for non-tipped jobs – and sub-minimum wage rates – for the tipped jobs, where the expectation was that that the tips would equal the minimum wage.  To the extent that some Plaintiffs worked more than 40 hours per work week, Delta-Sonic violated federal and state law by deliberately paying the wrong overtime rate. Indeed, Delta-Sonic failed to compensate Plaintiffs at the mandatory, statutory rate of one-and-one-half times the *regular* hourly rate, and instead, selected the *lowest* hourly rate that Plaintiffs earned that week as the basis of computing Plaintiffs' overtime wages. Delta-Sonic willfully miscalculated Plaintiffs' overtime pay on a class-wide basis.

47.     Additionally, at all relevant times, Delta-Sonic failed to provide Plaintiffs, and all similarly situated class members, with accurate wage statements with each payment, as required by the NYWTPA. Likewise, Defendant failed to provide Plaintiffs, and all similarly situated class members, with accurate wage notices upon hiring, and annually thereafter, as required by the NYWTPA. To the extent wage notices and wage statements were provided, they were inaccurate and misleading, since they did not include the compensable wait-time, and the purported tip allowance, if claimed, was unlawful, since the threshold requirements for taking such a tip

allowance were not satisfied by Delta-Sonic.

48.     Upon information and belief, Delta-Sonic's unlawful conduct, as described herein, was willful, deliberate and intentional, and was in furtherance of Delta-Sonic's goal to minimize labor costs by systematically and repeatedly violating the FLSA and NYLL.

49.     The Defendant's unlawful conduct has been widespread, repeated, consistent, and willful.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Taylor Lennert

50.     Plaintiff Taylor Lennert worked for Defendant from on or about March 2017 until on or about March 2020, as a Delta Tech and Advisor, at the Car Wash Center located at 4983 Transit Rd., Williamsville, New York.

51.     From the commencement of her employment until August 2019, Ms. Taylor Lennert worked full time for Delta-Sonic, and routinely worked in excess of forty (40) hours per week.

52.     After August 2019, Ms. Taylor Lennert worked part-time, approximately three (3) days a week.

53.     Pursuant to Delta-Sonic's policy, Ms. Taylor Lennert was required to call Delta-Sonic one hour or thirty minutes before the start of her scheduled shift. However, routinely, she was told to call back again in another hour, and very often, she was asked to call back in yet another hour. Thus, several hours each week were spent simply waiting to find out whether she would, in fact, go to the car wash to work her shift.

54.     Ms. Taylor Lennert estimates that she spent three (3) hours per week, simply waiting to find out whether or not she was working that day. During such times, Ms. Lennert was

precluded from performing any other activities.  She was never compensated for those hours.

55.    Likewise, sometimes, Ms. Taylor Lennert would go to the carwash center for her shift, only to be told to go home one or two hours later due to rain. When this occurred, she was never paid for the full four hours, as she was entitled to be paid, as a matter of law.

56.    Ms. Taylor Lennert held various positions with Delta-Sonic, including, inter alia: car washing outside (both tipped and non-tipped); interior detailing (both tipped and non-tipped); and advising clients at the front gate. Thus, Ms. Taylor Lennert was paid three different pay rates. For tipped work, Ms. Taylor Lennert received sub-minimum wage rates with the expectations that the tips received would cover the difference; for non-tipped work, she received minimum wage rates; and for advising work, she received a little more than minimum wage rates.

57.    Thus, Taylor Lennert, along with other employees, was subject to Delta-Sonic's unlawful compensation policy, which paid her at sub-minimum wages based upon the tip credit allowance, for a portion of her work hours. However, Defendant consistently did not comply with the required threshold requirements for claiming the tip allowance.

58.    Moreover, although Delta-Sonic paid Plaintiff time-and-and-half for all overtime hours, Defendant computed it based on the lowest rate she was earning – the sub-minimum wage rate. That is in express violation of both federal and state law which requires that the Defendant pay Plaintiff time-and-one-half the *regular* rate -- which must equal or exceed minimum wage -- not the *lowest* rate.

59.    Plaintiff Taylor Lennert frequently worked twelve (12) hour shifts during the busy seasons. When she worked a spread of ten (10) hours, she was never provided with an additional hour's pay, in violation of 12 NYCCRR § 142-2.4. Likewise, when she worked a stretch of six (6) hours, she was routinely denied a meal break, in violation of NYLL § 162.

60.     Additionally, throughout the duration of her employment, Defendant failed to provide Plaintiff Taylor Lennert with the required written wage notice upon hiring, and annually thereafter, in violation of NYLL § 195(1).

61.     Likewise, Defendant failed to provide Ms. Taylor Lennert with the required wage statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided to Plaintiff Taylor Lennert, they were inaccurate and misleading, since they did not include the compensable wait time, the overtime rate was incorrect, and Defendant's tip credit was unlawfully taken.

62.     Plaintiff Taylor Lennert has spoken to several other Delta-Sonic employees and they have advised her that, they too, were subject to excessive wait periods without compensation, and other unlawful pay practices.

63.     Plaintiff Taylor Lennert has been designated as a class representative for the FLSA Collective Action and the New York Class, and she is ready, willing and able to carry out her responsibilities as a class representative.

### Mackenzie Lennert

64.     Plaintiff Mackenzie Lennert worked for Defendant from October 2018 until about April 2019, as a Delta Tech, at the Car Wash Center located at 4983 Transit Rd., Williamsville, New York.

65.     Ms. Mackenzie Lennert worked part-time, approximately three (3) days a week.

66.     Pursuant to Delta-Sonic's policy, Ms. Mackenzie Lennert was required to call Delta-Sonic one hour or thirty minutes before the start of her scheduled shift. However, routinely, she was told to call back again in another hour, and very often, she was asked to call back in yet another hour. Thus, several hours each week were spent simply waiting to find out whether or not

she should go to the car wash to work.

67.     Ms. Mackenzie Lennert estimates that she spent five (5) to six (6) hours per week, simply waiting to find out whether or not she was working that day. During such times, Ms. Mackenzie Lennert was precluded from performing any other activities. She was never compensated for those hours.

68.     Likewise, sometimes, Ms. Mackenzie Lennert would go to the carwash center for her shift only to be told to go home one or two hours later, due to rain. When this occurred, Ms. Lennert was never paid for the full four hours, as she was entitled to be paid, as a matter of law.

69.     In fact, in a willful attempt to circumvent the call-in pay law, Delta-Sonic directed Mackenzie Lennert to sign a statement electronically stating, falsely, that she was leaving before 4 hours "voluntarily," even though she was in fact, not leaving voluntarily.

70.     Ms. Mackenzie Lennert held various positions with Delta-Sonic, including, inter alia: car washing outside (both tipped and non-tipped), and interior detailing (both tipped and non-tipped). Thus, Ms. Taylor Lennert was paid two different pay rates. For tipped work, she received sub-minimum wage rates with the expectations that the tips received would cover the difference, whereas, for non-tipped work, she received minimum wage rates.

71.     Mackenzie Lennert, along with other employees, was subject to Delta-Sonic's unlawful compensation policy, which paid her at sub-minimum wages, based upon the tip credit allowance, for a portion of her work hours every week. However, Defendant did not comply with the required threshold requirements for claiming such a tip allowance.

72.     Additionally, throughout the duration of her employment, Defendant failed to provide Plaintiff Mackenzie Lennert with the required written wage notice upon hiring, and annually thereafter, in violation of NYLL § 195(1).

73.     Likewise, Defendant failed to provide Ms. Mackenzie Lennert with the required wage statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided to Plaintiff Mackenzie Lennert, they were inaccurate, since they did not include the compensable wait time, and Defendant's tip credit was unlawfully taken.

74.     Plaintiff Mackenzie Lennert has spoken to other Delta-Sonic employees and they have advised her that, they too, were subject to excessive wait periods without compensation, and other unlawful pay practices.

75.     Plaintiff Mackenzie Lennert has been designated as a class representative for the FLSA Collective Action and the New York Class. Ms. Mackenzie Lennert is ready, willing and able to carry out her responsibilities as a class representative.

### Adam Tucker

76.     Plaintiff Adam Tucker ("Mr. Tucker") worked for Defendant from April 2016 until on about October 2017, as a Delta Tech and Advisor, at the Car Wash Center located at 4983 Transit Rd., Williamsville, New York.

77.     Throughout his period of employment with Delta-Sonic, Mr. Tucker typically worked three (3) days a week.

78.     Pursuant to Delta-Sonic's policy, Mr. Tucker was required to call Delta-Sonic one hour or thirty minutes before the start of his scheduled shift. However, routinely, he was told to call back again in another hour, and very often, he was asked to call back in yet another hour. Thus, several hours each week were spent simply waiting to find out whether he should go to the car wash to work his shift.

79.     Mr. Tucker estimates that he spent approximately four (4) to five (5) hours every week, simply waiting to find out whether or not he was working that day. During such times, Mr.

Tucker was precluded from performing any other activities. Mr. Tucker was never compensated for those hours.

80.    Mr. Tucker held various positions with Delta-Sonic, including, inter alia: car washing outside (both tipped and non-tipped); interior detailing (both tipped and non-tipped); and advising clients at the front gate. Thus, Mr. Tucker was paid three different pay rates. For tipped work, Mr. Tucker received sub-minimum wage rates with the expectations that the tips received would cover the difference; for non-tipped work, he received minimum wage rates; and for advising work, he received a little more than minimum wage rates.

81.    Mr. Tucker, along with other employees, was subject to Delta-Sonic's unlawful compensation policy which paid him at sub-minimum wages, based upon the tip credit allowance, for a portion of his work hours. However, Defendant did not comply with the required threshold requirements for claiming such a tip allowance.

82.    Mr. Tucker frequently worked long shifts during busy seasons. However, when he worked a stretch of six (6) hours, he was routinely denied a meal break, in violation of NYLL § 162.

83.    Additionally, throughout the duration of his employment, Delta-Sonic failed to provide Mr. Trucker with the required written wage notice upon hiring, and annually thereafter, in violation of NYLL § 195(1).

84.    Likewise, Defendant failed to provide Mr. Tucker with the required wage statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided to Mr. Tucker, they were inaccurate and misleading, since they did not include the compensable wait time, and Defendant's tip credit was unlawfully taken.

85.    Mr. Tucker has spoken to other Delta-Sonic employees and they have advised him

that, they too, were subject to excessive wait periods without compensation, and other unlawful pay practices.

86.    Mr. Tucker has been designated as a class representative for the FLSA Collective Action and the New York Class. Mr. Tucker is ready, willing and able to undertake the responsibilities of a class representative.

### Stephanie Wetzel

87.    Plaintiff Stephanie Wetzel ("Ms. Wetzel") worked for Defendant from July 15, 2017 to February 13, 2019, as a Delta Tech, at the Car Wash Center located at 4983 Transit Rd., Williamsville, New York.

88.    When working as a Delta Tech, Ms. Wetzel's work schedule fluctuated, depending on her school schedule. During the school year, she worked approximately twice a week, whereas during the summer, she worked three (3) to four (4) times a week.

89.    Pursuant to Delta-Sonic's policy, Ms. Wetzel was required to call Delta-Sonic one hour or thirty minutes before the start of her scheduled shift. However, nine times out of ten, she was told to call back again in another hour, and very often, she was asked to call back in yet another hour. Thus, several hours each week were spent simply waiting to find out whether she should go into work.

90.    Ms. Wetzel estimates that during the school year, she spent two (2) to (3) hours per week, simply waiting to find out whether or not she was working that day, and during the summer, she spent five (5) to (6) hours, simply waiting. During such times, Ms. Wetzel was precluded from performing any other activities. Ms. Wetzel was never compensated for those hours.

91.    Ms. Wetzel held various positions with Delta-Sonic, including, inter alia: car washing outside (both tipped and non-tipped) and interior detailing (both tipped and non-tipped).

Thus, Ms. Wetzel was paid two different pay rates. For tipped work, Ms. Wetzel received sub-minimum wage rates with the expectations that the tips received would cover the difference, whereas for non-tipped work, she received minimum wage rates.

92.     Ms. Wetzel along with other employees, was subject to Delta-Sonic's unlawful compensation policy, which paid her at sub-minimum wages, based upon the tip credit allowance, for a portion of her work hours. However, Defendant did not comply with the required threshold requirements for claiming the tip allowance.

93.     Specifically, Ms. Wetzel was never given notice that Delta-Sonic was claiming a tip credit and that, in the event her tips did not equal minimum wage, Delta-Sonic would compensate her for the difference between the two amounts. Further, Delta-Sonic *never once* compensated her for the difference owed, when her wages did not equal minimum wage rates.

94.     Additionally, throughout the duration of her employment, Delta-Sonic failed to provide Ms. Wetzel with the required written wage notice upon hiring, and annually thereafter, in violation of NYLL § 195(1).

95.     Likewise, Defendant failed to provide Ms. Wetzel with the required wage statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided to Ms. Wetzel, they were inaccurate and misleading, since they did not include the compensable wait time, and Defendant's tip credit was unlawfully taken.

96.     Ms. Wetzel has spoken to other Delta-Sonic employees and they have advised her that, they too, were subject to excessive wait periods without compensation, and other unlawful pay practices.

97.     Ms. Wetzel has been designated as a class representative for the FLSA Collective Action and the New York Class. Ms. Wetzel is ready, willing and able to accept the responsibilities

of being a class representative.

## Ryen Seyfried

98.     Plaintiff Ryen Seyfried ("Mr. Seyfried") worked for Delta-Sonic from May or June 2016 until the summer of 2017, as a Delta Tech and Advisor, at the Car Wash Center located at 4983 Transit Rd., Williamsville, New York.

99.     When working as a Delta Tech, Mr. Seyfried's work schedule fluctuated, depending on his school schedule. During the school year, he was scheduled to work three (3) to four (4) days per week, but never worked that many days, due to Delta-Sonic's unlawful wait-time policies. Likewise, during the summer, he was scheduled to work approximately five (5) days a week, but again, he never worked that many days, due to Delta-Sonic's unlawful wait-time policies.

100.    Indeed, pursuant to Delta-Sonic's policy, Mr. Seyfried was required to call Delta-Sonic one hour or thirty minutes before the start of his scheduled shift. However, routinely, he was told to call back again in another hour, and very often, he was asked to call back in yet another hour. Thus, several hours each week were spent simply waiting to find out whether or not he should go to the car wash center for his shift.

101.    Mr. Seyfried estimates that he spent six (6) to seven (7) hours each week, simply waiting to find out whether or not he was working that day. During such times, Mr. Seyfried was precluded from performing any other activities. Mr. Seyfried was never compensated for those hours.

102.    Further, sometimes, Mr. Seyfried would go to the carwash center for his shift, only to be told to go home one or two hours later, due to rain. When this occurred, Mr. Seyfried was never paid for the full four hours, as he was entitled to be paid, as a matter of law.

103.    Mr. Seyfried held various positions with Delta-Sonic, including, inter alia: car washing outside (both tipped and non-tipped); interior detailing (both tipped and non-tipped); and advising clients at the front gate. Thus, Mr. Seyfried was paid three different pay rates. For tipped work, Mr. Seyfried received sub-minimum wage rates with the expectations that the tips received would cover the difference; for non-tipped work, he received minimum wage rates; and for advising work, he received a little more than minimum wage rates.

104.    Mr. Seyfried, along with other employees, was subject to Delta-Sonic's unlawful compensation policy which paid him at sub-minimum wages, based upon the tip credit allowance, for a portion of his work hours. However, Defendant did not comply with the required threshold requirements for claiming the tip allowance.

105.    Additionally, throughout the duration of his employment, Delta-Sonic failed to provide Mr. Seyfried with the required written wage notice upon hiring, and annually thereafter, in violation of NYLL § 195(1).

106.    Likewise, Defendant failed to provide Mr. Seyfried with the required wage statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided to Mr. Seyfried, they were inaccurate and misleading, since they did not include the compensable wait time, and Defendant's tip credit was unlawfully taken.

107.    Mr. Seyfried has spoken to other Delta-Sonic employees and they have advised him that, they too, were subject to excessive wait periods without compensation, and other unlawful pay practices.

108.    Mr. Seyfried has been designated as a class representative for the FLSA Collective Action and the New York Class. Mr. Seyfried is ready, willing and able to accept the responsibilities of being a class representative.

**Christine McConnell**

109.    Plaintiff Christine McConnell ("Ms. McConnell") worked for Defendant from May 2017 until about June or July 2019, as a Delta Tech, at the Car Wash Center located at 4983 Transit Rd., Williamsville, New York.

110.    When working as a Delta Tech, Ms. McConnell's work schedule fluctuated, depending on her school schedule. During the school year, she worked approximately three (3) days per week, equaling twenty (20) hours per week, on average. During the summer, in contrast, Ms. McConnell worked approximately five (5) days a week, equaling thirty-five (35) hours per week, on average.

111.    Pursuant to Delta-Sonic's policy, Ms. McConnell was required to call Delta-Sonic one hour or thirty minutes before the start of her scheduled shift. However, nine times out of ten, she was told to call back again in another hour, and sometimes asked to call back in yet another hour. Thus, several hours each week were spent simply waiting to find out whether she should go into work.

112.    Ms. McConnell estimates that during the school year, she spent three (3) to four (4) hours per week, simply waiting to find out whether or not she was working that day, and during the summer, she spent five (5) to six (6) hours, simply waiting. During such times, Ms. McConnell was precluded from performing any other activities. Ms. McConnell was never compensated for those hours.

113.    Further, sometimes, Ms. McConnell would go to the carwash center for her shift, only to be told to go home one or two hours later, due to rain. When this occurred, Ms. McConnell was never paid for the full four hours, as she is entitled to be paid, as a matter of law.

114.    Ms. McConnell held various positions with Delta-Sonic, including, inter alia: car

washing outside (both tipped and non-tipped) and interior detailing (both tipped and non-tipped). Thus, Ms. McConnell was paid two different pay rates. For tipped work, Ms. McConnell received sub-minimum wage rates with the expectations that the tips received would cover the difference, whereas for non-tipped work, she received minimum wage rates.

115.    Ms. McConnell, along with other employees, was subject to Delta-Sonic's unlawful compensation policy which paid him at sub-minimum wages, based upon the tip credit allowance, for a portion of her work hours. However, Defendant did not comply with the required threshold requirements for claiming the tip allowance.

116.    Additionally, throughout the duration of her employment, Delta-Sonic failed to provide Ms. McConnell with the required written wage notice upon hiring, and annually thereafter, in violation of NYLL § 195(1).

117.    Likewise, Defendant failed to provide Ms. McConnell with the required wage statements, setting forth specific criteria with each payment, in violation of NYLL § 195(3). To the extent same were provided, to Ms. McConnell, they were inaccurate, since they did not include the compensable wait time, and Defendant's tip credit was unlawfully taken.

118.    Ms. McConnell has spoken to other Delta-Sonic employees and the have advised her that, they too, were subject to excessive wait periods without compensation, and other unlawful pay practices.

119.    Ms. McConnell has been designated as a class representative for the FLSA Collective Action and the New York Class. Ms. McConnell is ready, willing and able to undertake her responsibilities as a class representative.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (Unpaid Wait Time under the FLSA, 29 CFR § 785.15)

120.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and

reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

121.     Defendant engaged in a widespread pattern and practice of requiring Plaintiffs to call in one hour ahead of their shifts, and then frequently requiring Plaintiffs to wait several hours before actually commencing their work at the car wash center. Plaintiffs lost several hours each week while they waited to find out whether or not they should go to work.

122.     Plaintiffs were not paid for the time they spent waiting to find out whether they should go into work.

123.     Plaintiffs were waiting only because they were required to wait, as a pre-condition and essential term of their employment.

124.     The FLSA provides that when waiting times "belongs to and is controlled by the employer," the employee is "engaged to wait," and the waiting time is an integral part of the job – and compensable. See 29 C.F.R. §785.15.

125.     Here, Defendant's failure to pay Plaintiffs and other similarly situated Class Members for their wait-time violated the FLSA.

126.     Therefore, the Defendant is liable to Plaintiffs and Class Members for their wait-time, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION AGAINST DEFENDANT
**(Failure to Provide "Call-In Pay" In Violation of NYCCRR § 142-2.3)**

127.     Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

128.     Defendant engaged in a widespread pattern and practice of requiring Plaintiffs to

leave the workplace before the completion of a four-hour shift, when it rained, or business was slow.

129.     When Defendant directed Plaintiffs to leave before the completion of four hours, it did not pay them for four hours of work in violation of NYCCRR § 142-2, which provides that, "[a]n employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly wage."

130.     Defendant willfully violated this provision, and denied Plaintiffs pay for the full four hours of pay to which they were entitled.

131.     Specifically, when Plaintiffs Taylor Lennert, Mackenzie Lennert, Mr. Seyfried, and Ms. McConnell were asked to leave work, before the completion of four hours, due to rain or slow business, they were *never* paid for the full four hours, in violation of the statute.

132.     Further, Delta-Sonic willfully attempted to circumvent the law by requiring Plaintiffs to electronically sign a statement stating, falsely, that they were leaving "voluntarily." This coercive statement does not relieve Defendant of liability to comply with the statute, and Defendant is thus required to pay Plaintiffs the full amount of their lawful wages.

133.     Based on the foregoing, Delta-Sonic is liable to Plaintiffs and Class Members for their call-in time, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION AGAINST DEFENDANT
**(Violation of Minimum Wage under the FLSA, 29. U.S.C. § 206)**

134.     Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

135.    Defendant has engaged in a widespread pattern and practice of paying Plaintiffs sub-minimum wages for a significant portion of their work hours.

136.    Although Defendant attempted to rely on the tip credit to satisfy its minimum wage obligations, Defendant failed to satisfy the threshold requirement for entitlement to such a tip credit.

137.    Specifically, Defendant failed to provide Plaintiff Stephanie Wetzel, and other similarly situated class members, with notice of the tip credit, in violation of the FLSA. See 29 USC § 203(m).

138.    Defendant's failure to pay Plaintiffs, and other similarly situated Class Members, the required minimum wage was willful within the meaning of the FLSA, 29 U.S.C. § 255.

139.    Defendant is therefore liable to Plaintiffs and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT
### (Violations of Minimum Wage under the NYLL)

140.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

141.    Defendant has engaged in a widespread pattern and practice of paying Plaintiffs sub-minimum wages for a significant portion of their work hours,

142.    Although Defendant attempted to rely on the tip credit to satisfy its minimum wage obligations, Defendant failed to satisfy the threshold requirement for such reliance upon the tip credit.

143.    Specifically, Defendant failed to provide Plaintiff Stephanie Wetzel, and other

similarly situated class members, with notice of the tip credit, in violation of the NYLL.

144. Likewise, Defendant failed to record, with each paycheck, as a separate item in Plaintiffs' wage records, the tip allowance that was being claimed on behalf of the Plaintiffs, and similarly situated class members, as required by the NYLL and 12 NYCRR § 142-2.5(b)(1)(iii).

145. Further, Defendant never compensated Plaintiffs, and similarly situated class members, for the difference owed, when the tips received from customers fell short of the minimum wage.

146. Defendant's willful and unlawful practices, as set forth above, violate the minimum wage provisions of the NYLL.

147. Therefore, Defendant is liable to Plaintiffs and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

**FIFTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Unpaid Overtime under the FLSA, 29 U.S.C. § 207)**

148. Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

149. Defendant violated the rights of the Plaintiffs and Class Members by failing to pay overtime compensation at a rate not less than one-and-one-half times the regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(l).

150. Specifically, Defendant systematically paid Taylor Lennert overtime compensation based on the lowest hourly rate she earned during the prior week, which at times, was sub-minimum wage. Thus, she was routinely denied overtime wages at the mandatory rate of one-and-one-half times the *regular* rate of pay for each hour worked, which must be equal to, or in excess

of minimum wage.

151.     Defendant's failure to pay Plaintiffs and Class Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

152.     Therefore, the Defendant is liable to Plaintiffs and Class Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (Unpaid Overtime under the NYLL and the NYCRR)

153.     Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

154.     NYLL § 160 and 12 NYCRR 142-2.2 require employers to compensate their employees at a rate not less than one-and-one-half times their regular rates of pay for any hours worked in excess of forty per week.

155.     Plaintiffs and the Class Members were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one and a half (1 ½) times their regular rate of pay.

156.     Specifically, Defendant systematically paid Taylor Lennert overtime compensation based on the lowest hourly rate she earned during the prior week, which at times, was sub-minimum wage. Thus, she was routinely denied overtime wages at the mandatory rate of one-and-one-half times the *regular* rate of pay for each hour worked, which must be equal to, or in excess of minimum wage.

157.     These practices were willful and lasted for the duration of all relevant time periods.

158.     By reason of the foregoing, Defendant is liable to Plaintiffs and Class Members for

their unpaid overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

## SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (Failure to Provide Meal Breaks in Violation of NYLL § 162)

159.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

160.    New York Labor Law § 162 provides that non-factory employees working a shift of more than 6 hours that extends through the noonday meal period (between 11:00 a.m. to 2:00 p.m.) are entitled to a work-free meal break of at least 30 minutes.

161.    Plaintiffs and class members did not receive a work-free meal break of at least 30 minutes as required by statute when they worked a 6-hour shift.

162.    Specifically, Plaintiffs Taylor Lennert and Adam Tucker did not receive a work-free meal break of at least 30 minutes, as required by statute, when they worked a 6-hour shift.

163.    These practices were willful and lasted for the duration of all relevant time periods.

164.    By reason of the foregoing, Delta-Sonic is liable for damages in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees

## SEVENTH CAUSE OF ACTION AGAINST DEFENDANT
### (Violation of New York's Spread-of-Hours Requirement, 12 N.Y.C.R.R. § 142-2.4)

165.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

166.    Under New York law, an "employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum

wage law], for any day in which ... the spread of hours exceeds 10 hours." 12 N.Y.C.R.R. § 142-2.4. Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 142-2.18.

167.    Plaintiffs and Class Members were routinely required to work more than ten (10) hours a day, without being compensated for the legally mandated spread of hours pay.

168.    In willful disregard of the N.Y.C.R.R., Defendant failed to compensate Plaintiffs and Class Members an additional hour's pay for each day that Plaintiff and Class Members worked a spread of hours that exceeded ten (10) hours or a split shift.

169.    Specifically, Plaintiff Taylor Lennert did not receive an additional hour of pay when she worked a stretch of 10 hours or more.

170.    These practices were willful and lasted for the duration of the relevant time periods.

171.    By reason of the foregoing, Defendant is liable for damages in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees.

**EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS**
**(Failure to Provide Annual Notices in Violation of the NYLL § 195(1))**

172.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

173.    Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

174.    Defendant knowingly failed to comply with this provision by failing to provide Plaintiffs and Class Members with any kind of annual notice whatsoever, let alone an annual notice

meeting the requirements of NYLL § 195(1)(a).

175.    To the extent any notices were given to Plaintiffs, they were inaccurate and misleading, since they failed to account for Plaintiffs' compensable wait-time, and the tip allowance claimed by the Defendant was unlawful.

176.    Based on the foregoing, Defendant is therefore liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## NINTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Failure to Provide Wage Statements in Violation of the NYLL § 195(3))

177.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

178.    Pursuant to NYLL § 195(3), every employer is required to:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

179.    Defendant knowingly violated this provision by failing to provide Plaintiffs and Class Members with wage statements meeting the requirements set forth above.

180.    NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees, as well as appropriate injunctive and/or declaratory relief.

181.    During the course of Plaintiffs' and Class Members' employment, Defendant

consistently and willfully failed to provide them with adequate wage statements as required by New York law.

182.     To the extent any paystubs were given to Plaintiffs, they were inaccurate and misleading, since they failed to account for Plaintiffs' compensable wait time, and the tip allowance claimed by the Defendant was unlawful.

183.     Defendant is therefore liable to Plaintiffs and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

      a.  Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

      b.  Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

      c.  Designating Mackenzie Lennert, Taylor Lennert, Adam Tucker, Stephanie Wetzel, Ryen Seyfried and Christine McConnell, as Class Representatives;

      d.  Designating Joseph & Norinsberg, LLC as Class Counsel;

      e.  Granting judgment in favor of Plaintiffs, FLSA Plaintiffs, and the New York Class, and against the Defendants, and awarding the amount of unpaid overtime wages calculated at the rate of one-and-one-half (1.5) times Plaintiffs' regular rate, multiplied by all hours that Plaintiffs worked in excess of the prescribed number of hours per week;

      f.  Awarding liquidated damages to Plaintiffs, FLSA Plaintiffs, and the New York Class, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Class Members;

      g.  Awarding all other available compensatory damages to Plaintiffs, FLSA Plaintiffs, and the New York Class, including, inter alia, all unpaid wages, lost interest owed, and liquidated and double damages by Defendants under the FLSA, NYLL, and NYWPTA;

h.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

i.  Awarding pre-judgment and post-judgment interest to Plaintiffs on these damages; and

j.  Awarding such further relief as this court deems just and proper.

Dated: New York, New York
        April 22, 2020

Respectfully submitted,

JOSEPH & NORINSBERG, LLC

By: _____
Jon L. Norinsberg, Esq.
Chaya M. Gourarie, Esq.
225 Broadway, Suite 2700 New
York, New York, 10007
Tel: (212) 227-5700
Fax: (212) 406-6890
*Attorneys for Plaintiffs and Putative Class*

TO:    DELTA-SONIC CARWASH SYSTEMS, INC.,
       570 Delaware Avenue
       Buffalo, New York 14202

34