**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**TAYLOR LENNERT, *et al.*,**

                              **Plaintiffs,**

**v.**

                                                            **20-CV-479-LJV(HKS)**

**DELTA-SONIC CARWASH SYSTEMS, INC.,**

                              **Defendant.**

_____

## REPORT, RECOMMENDATION, AND ORDER

        This case was referred to the undersigned by the Hon. Lawrence J. Vilardo,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions. Dkt. #8. Plaintiffs, six former employees of Defendant Delta-Sonic

Carwash Systems, Inc. ("Delta-Sonic), allege violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201, *et seq*., and New York Labor Law § 195 ("NYLL"). Dkt. #47.

Plaintiffs bring this putative collective and class action on behalf of themselves and all

similarly situated employees. *Id*.


        Currently before the Court is Defendant's Motion to Dismiss the Second

Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dkt. #48. For the following reasons, it is recommended that the motion be granted.


## BACKGROUND

        The factual background of this case was set forth in the previous Report,

Recommendation, and Order, Dkt. #32, and it is incorporated here.

A review of the case's procedural history, however, will be helpful. Plaintiffs filed this action on April 22, 2020. Dkt. #1. Defendant filed a motion to dismiss on July 10, 2020. Dkt. #5. Plaintiffs did not respond to the motion to dismiss but instead filed an amended complaint. Dkt. #14.

Defendant then moved to dismiss the amended complaint. Dkt. #20. On November 1, 2022, the undersigned issued a Report, Recommendation, and Order ("R&R") recommending that defendant's motion to dismiss be granted. Dkt. #32. The R&R also denied plaintiffs' request to amend their complaint a second time. Dkt. #32, p. 19.

Plaintiffs filed objections to the R&R. Dkt. #35. With their objections, plaintiffs tendered a proposed second amended complaint ("SAC"). Dkt. #35-1. Following oral argument, the Hon. Lawrence J. Vilardo issued a Decision and Order finding that the amended complaint was indeed subject to dismissal but that plaintiffs should be permitted to amend their complaint "one final time." Dkt. 46, p. 5.

## ANALYSIS

The familiar standard of review under Rule 12(b)(6) was set forth in the Court's prior R&R, Dkt. #32, p. 4, and it is incorporated here. The question now before the Court is whether the SAC satisfies that standard.

**Statute of Limitations**

Defendant first argues that plaintiffs' FLSA claims are time-barred. Dkt. #48-3, pp. 9-10.

The FLSA provides a two-year statute of limitations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

The FLSA also specifies that a collective or class action under the statute is "commenced" by a claimant:

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint *and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought*; or
>
> (b) *if such written consent was not so filed* or if his name did not so appear—*on the subsequent date on which such written consent is filed in the court in which the action was commenced*.

29 U.S.C. § 256 (emphasis added). The written-consent requirement is repeated in 29 U.S.C. § 216, which states, "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

The purposes of requiring consent are to "put the Defendants on notice of a plaintiff's participation in a lawsuit, and to ensure that each plaintiff intends to participate

in the case, and is not simply a procedural figurehead for an enterprising class action lawyer." *Contrera v. Langer*, 290 F. Supp.3d 269, 278-79 (S.D.N.Y. 2018) (citation and internal quotation omitted), report and recommendation adopted, No. 16 CV 3851-LTS-GWG, 2018 WL 3918179 (S.D.N.Y. Aug. 16, 2018).

Defendant argues that because the named plaintiffs have never filed the written consents required by the FLSA, their claims are time barred, even under the three-year statute of limitations. Dkt. #48-3, pp. 9-10.[1] Relevant case law supports this argument. *See, e.g., Morales v. Constr. Directions LLC*, 19-cv-6493, 2021 WL 8317096, at *3 (E.D.N.Y. Aug. 27, 2021) ("Unsurprisingly, in line with the statute's clear directives, [c]ourts in this Circuit have held that a named plaintiff in a FLSA collective action must submit written consent to join the lawsuit—in addition to the complaint—before the statute of limitations expires.") (citation and internal quotations omitted).

Indeed, this filing requirement has been strictly construed across the Circuits. *See, e.g., Acosta v. Tyson Foods*, 800 F.3d 468, 472 (8th Cir. 2015) (dismissing FLSA collective action because no named plaintiff filed a written consent to proceed as party plaintiff before the statute of limitations expired); *Frye v. Baptist Mem'l Hosp.*, 495 F. App'x 669, 677 (6th Cir. 2012) (affirming district court's dismissal of a FLSA collective action because "courts construe the [§ 256] language to do what it says: require a named

---

[1] Plaintiffs' alleged dates of employment with defendant were: Taylor Lennert ("on or about March 2017 until on or about March 2020"), Dkt. #47, ¶ 76; Mackenzie Lennert ("October 2018 until about April 2019"), Dkt. #47, ¶ 104; Adam Tucker ("from April 2016 until on or about October 2017"), Dkt. #47, ¶ 117; Stephanie Wetzel ("from July 15, 2017 to February 13, 2019"), Dkt. #47, ¶ 127; Ryen Seyfried ("from May or June 2016 until the summer of 2017"); Dkt. #47, ¶ 139; and Christine McConnell ("from May 2017 until about June or Jul 2019"), Dkt. #47, ¶ 150.

plaintiff in a collective action to file a written consent to join the collective action"); *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) ("If you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party. It makes no difference that you are named in the complaint, for you might have been named without your consent. The rule requiring written, filed consent is important because a party is bound by whatever judgment is eventually entered in the case...."); *In re Food Lion, Inc.*, Nos. 94-2360, 94-2645, 97-1443, 95-1274, 97-1444, 1998 WL 322682, at *13 (4th Cir. 1998) ("Redundant though it may seem to require consents from the named plaintiffs in a class action, the district court did not abuse its discretion in ordering such consents nor in dismissing the appellants' claims which exceeded the limitations period when no consents were filed within the applicable three year period.").

Plaintiffs concede that this is the law. Dkt. #52, pp. 12-14. They also concede that they have not filed written consents to serve as party plaintiffs, although they offer no explanation for that failure. *Id.* Plaintiffs argue, however, that defendant has forfeited or waived this defense by waiting more than three years to assert it. Dkt. #52, pp. 12-14. This argument is not well taken.

First, the Court notes that the cases cited by plaintiffs discussing waiver of a defense for failure to assert it in an answer, Dkt. #52, p. 6, are inopposite. Although this case has been pending for more than three years, defendant's obligation to file an answer has yet to arise due to the multiple amendments of the complaint and corresponding

motions to dismiss. *See* Fed. R. Civ. P. 12(a)(4)(A). Defendant thus has not "waived" any defense by failing to plead it.

Second, courts hold that defendants may raise a statute of limitations defense based on plaintiffs' failure to file written consents at various junctures in a case, and "defendants are not estopped from advancing that argument simply because they conducted discovery and did not place plaintiffs on notice that their consents were defective or missing." *Pineda v. Skinner Servs., Inc.*, Civil Action No. 16-12217, 2020 WL 5775160, at *9 (D. Mass. Sept. 28, 2020) (collecting cases). Defendant's invocation of this defense comes at a relatively early stage, procedurally speaking, compared to cases cited in *Pineda*.

Third, the timeliness defense only recently ripened as to all plaintiffs. FLSA wage and overtime claims accrue with each paycheck that violates the statute. 29 C.F.R. § 790.21(b). Plaintiffs' claims thus necessarily accrued on or before they left defendant's employ. Plaintiff Taylor Lennert was most recently employed by defendant, leaving in approximately March 2020. Dkt. #47, ¶ 76. Thus, applying the three-year statute of limitations[2], only in March 2023 did *all* of the named plaintiffs' claims became untimely.

---

[2] An employer willfully violates the FLSA where it either knowingly violates the law or shows reckless disregard as to the lawfulness of its conduct. *Litras v. PVM Intern. Corp.*, No. 11-cv-5695, 2013 WL 4118482, at *5 (E.D.N.Y. 2013) (citation and internal quotations omitted). "At this stage of litigation, plaintiff's general averment of willfulness satisfies the requirements of pleading a willful violation of the FLSA, so as to invoke the three-year statute of limitations." *Id.* at *6. *See also Goodman v. Port Auth. of New York and New Jersey*, 850 F. Supp.2d 363, 381 (S.D.N.Y. 2012) ("Whether or not a violation of the FLSA is 'willful' is a fact-intensive inquiry not appropriately resolved on a motion to dismiss.").

Defendant filed the present motion to dismiss the SAC one month after its filing on April 4, 2023, as ordered by the Court. Dkt. #46.

Although not cited by the parties, *Gesselle v. Jack in the Box, Inc.*, Case No. 3:10-cv-960-ST, 2013 WL 12318551 (D. Oreg. June 18, 2013), is similar and instructive. In 2010, five named plaintiffs filed a putative class and collective action alleging violations of the FLSA and state law. *Id.* at *1. After nearly three years of pretrial matters, defendant moved to amend its answer to add the affirmative defense that plaintiffs' claims were time-barred for failure to timely file consent forms. *Id.* Plaintiffs opposed the motion arguing, in part, undue delay, waiver, forfeiture, and estoppel. *Id.* at *2.

The Court found plaintiffs' arguments unavailing:

> The proposed Twelfth Affirmative Defense is based on plaintiffs' failure "to timely file opt-in consent forms." Plaintiffs are correct that this omission was immediately apparent to defendant when the Complaint was filed. ***However, this same fact was just as apparent to plaintiffs. Plaintiffs could have filed their individual opt-in consent forms with (or any time after) the filing of their Complaint. Defendant did nothing to limit or affect plaintiffs' ability to commence their FLSA collective claim by filing the signed opt-in consent forms. Nor did defendant have any duty to warn plaintiffs about their failure to properly commence their FLSA claims in accordance with 29 USC § 256(a).*** Therefore, plaintiffs cannot be heard to have reasonably relied on anything defendants did or did not do to excuse their failure to file the opt-in consent forms.

*Id.* (emphasis added). The Court further noted that "until the last named plaintiff failed to timely file the opt-in consent, defendant did not have the predicate acts to sustain a statute

of limitations defense as to all FLSA claims." *Id.* at *3. The Court held that defendant's filing of the motion to amend its answer one month after the claims of the last named plaintiff became untimely was thus "not undue delay." *Id.* at *2.

The Court subsequently granted defendant's motion for summary judgment based on the untimeliness of plaintiffs' claims. *Gesselle v. Jack in the Box, Inc.*, 6 F. Supp.3d 1141, 1161 (D. Oreg. 2014) ("An FLSA collective action does not commence until the plaintiffs give written consent and those written consents are filed with the Court. Perhaps the written consent requirement is repetitive as other courts have noted, but it is unambiguously required by the FLSA to commence a collective action. . . . Plaintiffs failed to file the required written consents with the Court within the limitations period, and, therefore, their FLSA collective action was not commenced within the limitations period.").

It is thus clear that plaintiffs' claims are time-barred, and plaintiffs' undeveloped request for application of equitable tolling, Dkt. #52, p. 14 n.1, is without merit. Federal courts "should grant equitable tolling sparingly, and only in rare and exceptional circumstances." *Rotari v. Mitoushi Sushi, Inc.*, 448 F. Supp.3d 246, 254 (E.D.N.Y. 2020) (citation and internal quotations omitted). Plaintiffs offer no basis for such tolling. Moreover, plaintiffs have been represented by counsel since the inception of this action, which undercuts any basis for equitable tolling. *Gessele*, 6 F. Supp. 3d at 1163 ("Plaintiff's personal lack of legal knowledge cannot support equitable tolling because Plaintiffs were represented by counsel well before the statute of limitations passed, and,

therefore, Plaintiffs are charged with constructive knowledge of the FLSA's written-consent requirements and statute of limitations.").

It will therefore be recommended that plaintiffs' FLSA claims be dismissed as untimely.

### Evidentiary Standard

Defendant attached to its motion to dismiss copies of several wage statements that it issued to plaintiffs during their employment. Dkt. ##48-1, 48-2. The parties dispute whether the Court may properly consider these documents in adjudicating the motion to dismiss. Dkt. #48-3, pp. 13-14; Dkt. #52, pp. 16-19.

On a motion to dismiss under Rule 12(b)(6),  "district courts must limit their consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; or (4) documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Thompson v. Elev8 Ctr. New York, LLC*, 20-CV-9581 (PGG) (JLC), 2023 WL 4556045, at *5 (S.D.N.Y. July 17, 2023) (citation and internal quotations omitted). "Limited quotation does not constitute incorporation by reference." *Id.*

Consideration of any other matters outside the pleadings requires the Court to convert the motion to dismiss into a motion for summary judgment. *Nakahata v. New*

*York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202-03 (2d Cir. 2013) (citing Fed. R. Civ. P. 12(d)).

While the SAC refers generally to plaintiffs' wage statements, the complaint does not expressly incorporate any specific document or make them integral to their pleading. Under the above authority, therefore, the Court will not consider defendant's attachments. *Cf. Thompson*, 2023 WL 4556045, at *6 (court could properly consider, on a Rule 12(b)(6) motion, time records attached to plaintiffs' complaint).

### Overtime Claim — Plaintiff T. Lennert (FLSA and NYLL)

As in the first amended complaint, plaintiff Taylor Lennert is the only named plaintiff in the SAC to assert a claim for overtime pay. Dkt. #47, ¶¶ 190-200.

The Court found this claim in the first amended complaint deficient because it failed to plead "any facts about the number of overtime hours that T. Lennert claims to have worked during any of these weeks, any facts to show what her 'regular' rate was during any of these weeks, and any facts to show what she actually got paid." Dkt. 32, p. 10).

While the SAC adds allegations regarding Taylor Lennert's work schedule and her rates of pay during one specific week, the allegations are still too general to pass muster under the Second Circuit's "edict that a complaint contain specificity as to

uncompensated hours during a particular week." *Thompson*, 2023 WL 4556045, at *7 (citations and internal quotations omitted).

First, the SAC alleges that Lennert "routinely" worked more than forty hours per week and "typically" worked over ten hours a day between March 2017 and August 2019. Dkt. #47, ¶¶ 76-77. However, generalities such as "regularly," "occasionally," and "typically" are not sufficient to state an overtime claim under either the FLSA or the NYLL. *Mendoza v. Cornell Univ.*, 1:20-cv-02110, 2021 WL 918622, at *2 (S.D.N.Y. Mar. 10, 2021) (citation omitted).

Similarly, as to the week of August 25, 2018, Lennert alleges that she "worked in excess of forty hours," Dkt. #47, ¶ 84, but again this is "little more than a paraphrase of the statute and cannot, standing alone, establish a plausible claim." *Id.* (citation and internal quotations omitted). How many total hours did she work that week, and how much was she paid? The SAC is silent on these questions.

This case thus stands in contrast to those where a plaintiff supplements otherwise general allegations with factual context that provide details regarding the actual hours he or she worked, which enables the court to determine if the plaintiff has plausibly alleged an overtime claim. *See, e.g., Thompson*, 2023 WL 4556045, at *6 (plaintiffs attached time records to their complaint showing hours worked during specific weeks); *Werst v. Sarar USA Inc.*, No. 17-CV-2181 (VSB), 2018 WL 1399343, at *6 (S.D.N.Y. Mar.

16, 2018) (plaintiffs provided chart of one plaintiff's weekly shifts, and second plaintiff alleged total hours worked in specific week).

Thus, while plaintiffs are not required "'to keep careful records and plead their hours with mathematical precision,'" they are required to rely on their "'memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place.'" *Werst*, 2018 WL 1399343, at *6 (quoting *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 90 (2d Cir. 2013)). The SAC's allegations lack sufficient factual context to satisfy these standards.[3]

It will thus be recommended that this claim be dismissed.

### *Minimum Wage Claim — Plaintiffs Wetzel and McConnell (FLSA and NYLL)*

In the SAC, plaintiff McConnell joins plaintiff Wetzel in alleging claims for minimum wage violations under federal and state law based upon defendant's use of tip credits. Dkt. #47, ¶¶ 177-189.

As discussed in the previous R&R, the FLSA provides that every employer shall pay to employees a minimum of $7.25 an hour. Dkt. #32, p. 12. "Therefore, to state a FLSA minimum wage claim, Plaintiff must prove that, in a given week, the total amount [s]he was paid divided by the number of hours [s]he worked was less than $7.25 per

---

[3] To the extent that Lennert premises her overtime claim on alleged "on-call" work, Dkt. #47, ¶ 84, such allegations do not support her claim. As discussed below, the Court concludes that the SAC does not allege that such "on-call" work constituted compensable time.

hour." *Fangrui Huang v. GW of Flushing I, Inc.*, No. 17-CV-3181 (PKC)(JO), 2019 WL 145528, at *5 (E.D.N.Y. Jan. 9, 2019).

The allegations in support of Wetzel's minimum wage claims are wholly conclusory. Dkt. #47, ¶¶ 132-133 ("Ms. Wetzel . . . was subject to Delta-Sonic's unlawful compensation policy, which paid her at sub-minimum wages, based upon the tip credit allowance, for a portion of her work hours."). The SAC does not plead facts regarding any week in which Wetzel was paid at a sub-minimum wage with the expectation that tips would make up the difference and, in fact, she received no such pay.

Where plaintiff "does not allege facts about her salary and working hours, such that a simple arithmetical calculation [could] be used to determine the amount owed per pay period, . . . her conclusory minimum wage allegations are insufficient to raise more than a mere possibility of a right to relief." *Palmer v. Trump Model Mgmt., LLC*, 175 F. Supp. 3d 103, 106 (S.D.N.Y. 2016) (citations and internal quotations omitted).

Further, as the Court noted in the prior R&R, plaintiffs allege that defendant paid employees bonuses and commission, which count towards the minimum wage. Dkt. #32, p. 13. The SAC makes the same allegation. Dkt. #43, ¶ 43. But Whetzel does not allege whether she did or did not receive such bonuses or commissions so as to impact the minimum wage she was paid in any given week.

McConnell's allegations fail for a different reason. She alleges that during the week of December 9, 2017 to December 15, 2017, she worked 8.3 hours and was paid $67.62. Dkt. #47, ¶¶ 155-156. This equates to $8.14 per hour, more than the FLSA's requirement. McConnell alleges she worked additional "on-call" hours to bring the hourly wage calculation below the minimum wage. *Id*. As discussed below, however, the Court concludes that the "on-call" hours do not amount to compensable time.

Finally, plaintiffs' allegations regarding allegedly defective wage notices cannot excuse plaintiffs' failure to plead even skeletal facts which would enable them to state a plausible minimum wage claim.

It will thus be recommended that these claims be dismissed.

### *"Unpaid Wait Time" Claim — All Plaintiffs (FLSA and NYLL)*

Plaintiffs next cause of action is for "unpaid wait time." Dkt. #47, ¶¶ 163-170. Plaintiffs alleged the same claim in the first amended complaint, and the Court found that their allegations failed to show that the alleged wait time was compensable under the FLSA. Dkt. #32, pp.6-9.

The FLSA, as amended by the Portal-to-Portal Act, does not require employers to pay an employee for "activities which are preliminary or postliminary" to the "principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a). The term "principal activity or activities" embraces activities which are "integral

and indispensable" to the job that the employee was hired to perform. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 517 (2014) (citation omitted).

In *Integrity Staffing*, the Supreme Court held that time spend by employees going through security screenings upon leaving work were non-compensable: "Integrity Staffing did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers." *Id.*

Plaintiffs allege that they were required to call in to defendant prior to the beginning of their shifts to see when they would be required to report to defendant's car wash location in Williamsville, New York; that they were often required to wait for several hours before defendant confirmed whether they should report; that these periods were unpredictable and followed no set pattern; and that plaintiffs were thus unable to use the time for their own benefit. Dkt. #47, ¶¶ 4-6, 48-57, 91-95, 106-109, 119-121, 129-131, 141-143, 152-154.

Given that plaintiffs were hired to wash cars and perform related tasks, waiting at home to confirm when they should report to work would not be an "integral and indispensable" part of the duties they were hired to perform. *Integrity Staffing*, 574 U.S. at 518.

Moreover, when "an employee 'is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached,' the employee is merely 'waiting to be engaged' and is not working under the FLSA." *Donato v. Serv. Experts, LLC*, No. 1:17-CV-436 (DNH/CFH), 2018 WL 4660375, at *5 (N.D.N.Y. Sept. 28, 2018) (quoting 29 C.F.R. § 785.17). Ultimately, whether waiting time is time worked under the FLSA is dependent on whether the employee was engaged to wait or was waiting to be engaged. *Id.*

The SAC expands plaintiffs' prior allegations in an effort to avoid dismissal. Plaintiffs now allege that: (1) they were not "permitted to leave their homes" while waiting to hear back from defendant, and (2) defendant prohibited them "from leaving their homes and travelling any distance away from their assigned car wash location ***if doing so would result in them taking more than one hour to arrive if they were called back into work***." Dkt. 47, ¶ 52 (emphasis added).

The Court first notes that these two allegations are internally inconsistent, but reading them together and in plaintiffs' favor, the Court understands them to mean that plaintiffs were free to engage in any activities they desired so long as they were available to take defendant's call and return to their work location within one hour, if so requested. This is not the degree of restraint that makes an employee "engaged to wait" such that the time is compensable "work.". *See Donato*, 2018 WL 4660375, at *5 ("Conversely, [p]eriods during which an employee is completely relieved from duty and

which are long enough to enable him to use the time effectively for his own purposes are not hours worked.") (citation and internal quotations omitted).

Therefore, although plaintiffs have added verbiage to the SAC, they have not substantively strengthened the factual basis for this cause of action so as to alter the Court's previous recommendation. *See* Dkt. #32, p. 9.

It will thus be recommended that these claims be dismissed.

### Supplemental Jurisdiction

"Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances." *Donato*, 2018 WL 4660375, at *5 (citation and internal quotations omitted).

It is thus recommended that the Court decline to exercise its supplemental jurisdiction over plaintiffs' state law claims and dismiss them without prejudice.

Should the Court exercise its supplemental jurisdiction, the undersigned makes the following recommendations.

### *"Call-in Pay" Claim — Plaintiffs T. Lennert, M. Lennert, McConnell, and Seyfried (NYLL)*

Four plaintiffs allege a violation of 12 N.Y.C.R.R. § 142-2.3 based on defendant's failure to pay them for at least four hours on days when they were sent home before completing such time. Dkt. #47, ¶¶ 171-176.

The SAC's general allegations in support of this claim repeat verbatim or merely re-state the "boilerplate" assertions of the amended complaint that the Court has already determined are fatally conclusory. Dkt. #47, ¶¶ 7, 60, 110-111, 144, 157.

Plaintiffs add a new paragraph alleging that Taylor Lennert was sent home on October 27, 2019 after working three hours but defendant failed to pay her four hours for that shift. Dkt. #47, ¶ 98. This allegation does not render this claim viable, however, because Lennert does not allege what her total hours and compensation were for that week. As defendant notes, the New York Department of Labor has interpreted this call-in pay provision to require an employer to provide additional pay for such time only where the amount paid to an employee for that week falls below the minimum wage rate. Dkt. #48-1, pp. 7-8.

Plaintiffs argue that the Court should afford no deference to this authority, but they provide no reasoned basis for that request. Dkt. #52, pp. 29-31.

It will thus be recommended that these claims be dismissed.

***Wage Notice and Wage Statement Claims — All Plaintiffs (NYLL)***

Plaintiffs' final state law claims allege that defendant failed to provide certain notice to plaintiffs upon hire pursuant to NYLL § 195(1) and that it failed to provide accurate wage statements containing information required by NYLL § 195(3). Dkt. #47, ¶¶ 201-211.

As to the wage statement claim, New York law "provides an affirmative defense against improper wage statements claim[s] if the employer made complete and timely payment of all wages due." *Adams v. Bloomberg L.P.*, 20-CV-7724 (RA) (JLC), 2023 WL 1957681, at *15 (S.D.N.Y. Feb. 13, 2023) (citing NYLL § 198(1-d)).[4] Because plaintiffs have not plausibly plead any wage and hour violations, this defense is applicable.

Finally, as to the wage notice claims, because defendant relies on wage statements which the undersigned opines many not be appropriately considered at the Rule 12(b)(6) claim, the Court should simply decline to exercise its supplemental jurisdiction over this claim.

---

[4] Defendant invokes this defense in its reply brief. Dkt. #55, p. 21.

It will thus be recommended that the Court dismiss plaintiffs' wage statement claim and decline to exercise supplemental jurisdiction over plaintiffs' wage notice claims.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss (Dkt. #27) be granted as to plaintiffs' FLSA claims and that the Court decline to exercise its supplemental jurisdiction over plaintiffs' state law claims.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

~ 20 ~

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
                   October 17, 2023

<u>  s/ H. Kenneth Schroeder, Jr.</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

~ 21 ~